**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-2279-WJM

FLORENCE MARONEY,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration

    Defendant.

## ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DECISION

This is a social security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Florence Maroney ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for supplemental security income benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

For the reasons set forth below, the ALJ's decision denying Plaintiff's application for Social Security disability benefits is AFFIRMED.

### I.  BACKGROUND

Plaintiff was born on February 24, 1966 and was 39 years old on the original alleged onset date. (Admin. Record ("R.") (ECF No. 9) at 519.) She was 42 years old on the protective filing date of her Title XVI application and the amended alleged onset of disability date. (*Id.*) Plaintiff has at least an eleventh grade education and received a

certificate of training to be a nurse's aide. (R. at 190, 339.)

Plaintiff filed an application for supplemental security income under Tile XVI of the Act on June 23, 2008, alleging that she was disabled due to chronic pain, hypertension, depression, and spinal fusion. (R. at 152.) The application was initially denied and, after an administrative hearing in April 2010, ALJ James A. Wendland found that Plaintiff was not disabled. (R. at 8-27.) After the Appeals Council denied Plaintiff's request for review (R. at 1), Plaintiff appealed the ALJ's decision to this Court, which remanded the matter back to the Social Security Administration to consider evidence Plaintiff submitted to the Appeals Council after the ALJ rendered his decision. (R. at 580-88.)

On remand, the ALJ held a new hearing on April 16, 2013. (R. at 527.) On May 3, 2013, he issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1] (R. at 506-20.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 23, 2008. (R. at 508.) At step two, he found that Plaintiff suffered from the following severe impairments: "status-post cervical discetomy and decompression surgery with subsequent removal of hardware, degenerative disc disease, status-post ankle fracture, osteoarthritis, depressive disorder, post-traumatic stress disorder (PTSD), and paranoid

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

schizophrenia." (*Id.*) The ALJ did not find Plaintiff's hyperlipidemia, hypertension, and hepatitis C to be severe impairments. (*Id.*) At step three, the ALJ found that Plaintiff's impairments, while severe, did not meet or medically equal any of the impairments listed in the social security regulations. (R. at 509.) The ALJ assessed Plaintiff's residual functional capacity ("RFC"), finding that she had the RFC to do a full range of work with the following specific restrictions and requirements:

> Not required to lift and carry more than 10 pounds; not required to stoop or crouch more than occasionally; not required to climb, crawl, or kneel; not require[d] to stand and/or walk for more than 2 hours of out an 8 hour workday; not required to work above shoulder level with upper extremities; not required to handle or finger objects more than frequently; not required to work at unguarded heights or near unguarded hazardous mechanical equipment; not required to understand, remember, and carry out more than simple instructions; not required to interact with the public; not required to be exposed to cold temperatures; and not required to do repetitive up and down or side to side neck movements.

(R. at 512.)

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (R. at 519.) At step five, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. (*Id.*) Specifically, the ALJ found that Plaintiff could work as an addressing clerk, document specialist, or jewelry preparer. (R. at 520.)

Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and, thus, not entitled to benefits. (*Id.*) Plaintiff did not file written exceptions with the Appeals Council and the Appeals Council did not review the ALJ's decision on its own. (ECF No. 1 ¶ 7.) Plaintiff then filed this action seeking review of the ALJ's May 3, 2013 decision. (*Id.*)

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.  "It requires more than a scintilla, but less than a preponderance."  *Lax*, 489 F.3d at 1084.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  ANALYSIS

On appeal, Plaintiff argues that the ALJ did not properly assess her credibility, that the ALJ failed to properly evaluate her medical evidence, and that the types of jobs the ALJ found she could perform do not exist in significant numbers in the national economy.  (ECF No. 15.)  The Court will discuss each of Plaintiff's arguments in turn.

### A.     Credibility

Plaintiff argues that the ALJ improperly weighed the evidence regarding her subjective impairments of chronic pain and its effect on her loss of function, and complaints of an emotional collapse.  (ECF No. 15 at 11-12.)  She also argues that the

ALJ improperly assessed her credibility by failing to inquire as to whether her failure to seek medical assistance was the result of her financial condition. (*Id.* at 15.)

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (quotation omitted). While an ALJ must do more than simply "recite[ ] the general factors he considered," so long as "the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," his determination must stand. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms" to be "not entirely credible." (R. at 513.) As to Plaintiff's neck and back pain, the ALJ found that Plaintiff's allegations of the severity of her limitations were undermined by evidence showing that Plaintiff did not seek treatment for her neck and back pain for more than one year after her initial hearing. (R. at 514 (citing R. at 696).) He noted that shortly after Plaintiff's first hearing, she did not complain of any of her disabling symptoms or request any medication for those symptoms during her initial visit with a new healthcare provider. (R. at 513-14 ("One would typically expect that an individual would tell a new medical provider of all conditions, paricular[ly] those impairments that they allege are disabling.").) The ALJ also noted that Plaintiff's neck and back pain was relieved by medication. (R. at 513 (citing R. at 545), 514 (citing R. at 696, 719).)

The ALJ found that Plaintiff's statements as to the severity of her mental conditions were undermined by evidence showing that Plaintiff described her auditory hallucinations as faint voices in the background (R. at 819-20), and that, without

5

medication, the hallucinations were only "somewhat worse" (R. at 832). The ALJ also found that the objective medical evidence did not support Plaintiff's testimony that she takes on another personality. (R. at 516.)

The ALJ also made findings as to Plaintiff's credibility based on her assertions that she was unable to afford medical treatment. (R. at 515.) The record shows that, although Plaintiff's medical providers tried to help Plaintiff sign up for a prescription assistance program, Plaintiff failed to provide the requested documentation. (R. at 837-41.) The ALJ stated that "[t]he fact that [Plaintiff] failed to cooperate with her mental health providers for assistance in low-cost medication detracts from her credibility regarding the severity of her symptoms." (R. at 515.)

Plaintiff argues that the ALJ cannot assess her credibility based upon her financial condition, because the ALJ did not ask Plaintiff if she was financially unable to obtain the necessary medical care. (ECF No. 15 at 15.) The case Plaintiff cites, *Luna v. Shalala*, explains that an ALJ must "assist *pro se* claimants in developing the record fully and fairly." 22 F.3d 687, 692 (7th Cir. 1994). Here, however, the record shows that Plaintiff was represented by counsel at the administrative hearing, and that her counsel did not question her regarding her ability to afford medical care. (R. at 527-75.) Accordingly, the ALJ was entitled to rely on Plaintiff's counsel to structure and present Plaintiff's case in a way that Plaintiff's claims were adequately explored. *See Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004).

Accordingly, in considering the record and the ALJ's credibility analysis, the Court finds that the ALJ applied the correct legal standards in making his determination of Plaintiff's credibility, and his conclusions were supported by substantial evidence in

the record.  *See Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990) (credibility determinations are the province of the ALJ and will be upheld provided that they are supported by substantial evidence).

**B.    Medical Evidence and Opinions**

Plaintiff next argues that the ALJ failed to consider the combined impact of all of her impairments.  (ECF No. 15 at 13-15.)  She also argues that the ALJ failed to follow this Court's directive to consider the evidence Plaintiff submitted to the Appeals Council after the ALJ rendered his decision.  (*Id.* at 18.)  Finally, she maintains that the ALJ improperly disregarded the diagnosis and conclusions of Plaintiff's physicians.  (*Id.* at 16-19.)  The Court will address each of Plaintiff's arguments below.

A.    <u>Medical Evidence</u>

At step four, the ALJ must consider whether Plaintiff's "impairment or combination of impairments prevents her from performing her past work."  *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (brackets omitted).  Here, the ALJ stated that in making his decision, he "carefully considered all of the documents identified in the record as exhibits, both in connection with the Order of Remand and in connection with the prior hearing[.]"  (R. at 508).  He also considered Plaintiff's impairments individually and in combination when he evaluated whether her impairments met or equaled a listed impairment.  (R. at 509) ("The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]").)  The Court's "general practice," which we see no reason to depart from here, "is to take a lower tribunal at its word when it declares that it has

considered a matter." *Flaherty*, 515 F.3d at 1071.  Because the record reflects that the ALJ considered Plaintiff's impairments in combination, and that the ALJ reviewed the evidence obtained after the first hearing,[2] we will not disturb his determination.

    B.     Medical Opinions

Plaintiff argues that the ALJ improperly disregarded the diagnosis and conclusions of Plaintiff's physicians.  (ECF No. 15 at 12.)  Plaintiff first argues that the ALJ completely ignored the "psychiatric diagnosis and conclusions reached by Dr. Jensen."  (*Id.* at 13.)   Dr. Jensen was a physician at the Aurora Mental Health Center ("AMHC"), and the ALJ discussed the AMHC treatment notes in detail in his decision.  (R. at 514-15.)  In doing so, the ALJ specifically addressed Dr. Jensen's medical reports as evidence that Plaintiff's mental health improved with medication.  (R. at 515 (citing R. at 775-77).)  Also, Plaintiff does not explain what the psychiatric diagnosis or conclusions were which were allegedly ignored, and the record does not reflect that Dr. Jensen ever diagnosed Plaintiff.[3]

Plaintiff next argues that the ALJ disregarded the opinions, diagnosis, and conclusions reached by Drs. Ryan and Leidel, non-treating physicians.  (ECF No. 15 at 13.)  "When considering the weight of non-treating sources, the ALJ must determine the appropriate weight given to the source by looking to the factors that apply to all medical

---

    [2]  The ALJ specifically referred to the evidence submitted to the Appeals Council after the ALJ rendered his initial decision.  (*See* R. at 509 (citing R. at 849-89), 511 (citing R. at 420, 462-65, 784-85, 805, 832), 515 (citing R. at 755-77).)

    [3]   The record shows that, although Dr. Jensen occasionally attended Plaintiff's therapy sessions, (R. at 753), he was not her therapist, and instead provided her with "medication management" services (R. at 756, 759).

opinions." *Retana v. Astrue*, 2012 WL 1079229, at *4  (D. Colo. Mar. 30, 2012).  "If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it."  *Hamlin*, 365 F.3d at 1215 (citing 20 C.F.R. § 416.927(f)(2)(ii)).

The ALJ reviewed the medical opinion of Dr. Leidel, a consulting examiner, and gave it significant weight.  (R. at 517.)  The ALJ, however, did not mention Dr. Leidel's assessment that Plaintiff had a Global Assessment of Functioning (GAF) score of 56.  (ECF No. 15 at 17.)  "[T]he Tenth Circuit has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJs determination of non-disability."  *Martinez v. Colvin*, 2014 WL 717192, at *5 (D. Colo. Feb. 25, 2014).  "The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere."  *Smith v. Astrue*, 2010 WL 3769233, at *4 (E. D. Okla. Sept. 27, 2010).  The Court, therefore, finds that the ALJ's failure to discuss Plaintiff's GAF is not reversible error.

Additionally, the ALJ did not concur with Dr. Leidel's assessment that Plaintiff had borderline intellectual functioning.  (*Id.*)  "An opinion found to be an examining rather than treating medical-source opinion may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the cited regulations and the ALJ must provide specific, legitimate reasons for rejecting it."  *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).  Here, the ALJ found that the assessment was based solely on a mental status investigation, and without the benefit of any formal IQ or other testing.  (*Id.*)  The ALJ also found that Dr. Leidel's opinion was

not consistent with the record. (*Id.*) The record shows that Plaintiff completed the eleventh grade, that she obtained a certificate of training to be a nurse's assistant (R. at 339), and that no other medical professional made a similar finding (R. at 517). The Court, therefore, finds that the ALJ provided adequate reasons for rejecting Dr. Leidel's opinion regarding Plaintiff's mental functioning.

The ALJ reviewed the medical opinion of Dr. Ryan, a state agency medical consultant, and gave it significant weight, but also found that Plaintiff's impairments were "somewhat more limiting than was determined by Dr. Ryan." (R. at 517.) Plaintiff argues that the ALJ erred by rejecting Dr. Ryan's opinion that Plaintiff was of "borderline" intelligence. (ECF No. 15 at 17.) The record shows, however, that Dr. Ryan did not diagnose Plaintiff as having borderline intellectual functioning. (R. at 230-51.) What Plaintiff argues was Dr. Ryan's diagnosis is actually Dr. Ryan's summary of Dr. Leidel's examination notes. (*See* R. at 250.) Dr. Ryan did not make an independent finding regarding Plaintiff's intellectual abilities. Additionally, the summary conclusion of Dr. Ryan's report finds that Plaintiff was "not significantly limited" or "moderately limited" in all areas of functioning. (R. at 252-54.) This is consistent with the ALJ's decision. (*See* ECF No. 510-11 (finding that Plaintiff had moderate restrictions and difficulties).)

The ALJ gave no weight to the opinions of two nurse practitioners who found that Plaintiff was disabled. (R. at 516.) An opinion provided by a nurse practitioner is not entitled to the same deference as an opinion by a physician, because it is not an "acceptable medical source." *See* 20 C.F.R. §§ 416.913(d)(1) (explaining that "other sources" include nurse practitioners). Only "acceptable medical sources" can establish

the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight.  *Weaver v. Astrue*, 353 F. App'x 151, 155 (10th Cir. 2009) (citing Social Security Ruling (SSR) 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).  Moreover, whether a claimant is disabled is a determination reserved to the Commissioner.  *Lackey v. Barnhart*, 127 F. App'x 455, 457 (10th Cir. 2005) (explaining that the ultimate question of disability is an issue reserved to the Commissioner); 20 C.F.R. § 404.1527(a)(2).  The ALJ, therefore, did not err in giving these opinions no weight.

Accordingly, the Court finds that the ALJ applied the correct legal standards when evaluating the medical evidence in this case.  Because "more than a scintilla" of evidence exists to support the ALJ's evaluation of the physicians' opinions, and that evidence was not overwhelmed by contrary evidence, the Court finds that the ALJ's analysis was supported by substantial evidence in the record.  *See Lax*, 489 F.3d at 1084.  Therefore, the Court finds no error in the ALJ's weighing of the physicians' medical opinions.

**C.      Jobs in the National Economy**

Finally, Plaintiff argues that the jobs cited by the ALJ at step five do not exist in significant numbers in the national or regional economy.  (ECF No. 15 at 19.)  Here, the ALJ relied upon testimony of the vocational expert and found that Plaintiff could perform the position of an addressing clerk (20,000 jobs nationally), the position of a document specialist (10,000 jobs nationally), and the position of a jewelry preparer (19,000 jobs nationally).  (R. at 520.)  The court finds that 49,000 is a significant number of jobs for

step five purposes.  *See Prince v. Apfel*, 1998 WL 317525, at *3 (10th Cir. June 11, 1998) (50,000 gate tender jobs nationwide and 20,000 night watchmen jobs nationwide constituted significant number of jobs); *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (11,000 sedentary hand packer jobs nationwide constituted significant number of jobs.).  Accordingly, the Court finds that the ALJ met his burden at step five.

## IV.  CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Commissioner's denial of benefits.  The Clerk shall close this case and enter judgment in favor of Defendant.  Each party shall bear her own attorney's fees and costs.

Dated this 25th day of September, 2014.

BY THE COURT:

_____
William J. Martínez
United States District Judge